RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0185p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MICHAEL SULLIVAN,

    *Plaintiff-Appellant*,

  *v.*

             No. 22-1203

LG CHEM, LTD.,

    *Defendant-Appellee*.

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-11137—Laurie J. Michelson, District Judge.

Argued:  May 3, 2023

Decided and Filed:  August 17, 2023

Before:  MOORE, CLAY, and GIBBONS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Mark Granzotto, MARK GRANZOTTO, PC, Berkley, Michigan, for Appellant. Rachel Atkin Hedley, NELSON, MULLINS, RILEY & SCARBOROUGH LLP, Columbia, South Carolina, for Appellee.  **ON BRIEF:**  Mark Granzotto, MARK GRANZOTTO, PC, Berkley, Michigan, Wolfgang Mueller, MUELLER LAW FIRM, Novi, Michigan, for Appellant. Rachel Atkin Hedley, NELSON, MULLINS, RILEY & SCARBOROUGH LLP, Columbia, South Carolina, Cynthia M. Filipovich, CLARK HILL PLC, Detroit, Michigan, for Appellee.

───────────────

## OPINION

───────────────

KAREN NELSON MOORE, Circuit Judge.  Defendant LG Chem, Ltd. ("LG Chem") manufactured the LG HG2 18650 lithium-ion batteries that exploded in Plaintiff Michael

Sullivan's pocket and caused him severe second- and third-degree burns. Sullivan seeks to hold LG Chem liable for his injuries. Sullivan obtained these batteries from a vape store in Michigan to use for his e-cigarette device. But LG Chem, a South Korean company, vigorously opposes personal jurisdiction. It argues that exercising personal jurisdiction over it in Michigan would be improper under both Michigan's long-arm statute and the Due Process Clause because, not only has LG Chem never sold the 18650 batteries to this Michigan vape store, but also it has never sold its 18650 batteries for individual consumer use in Michigan. We conclude that LG Chem urges too narrow a view of personal jurisdiction. The district court sitting in Michigan may properly exercise personal jurisdiction over LG Chem because it directly shipped its 18650 batteries into the State of Michigan and entered into two supplier contracts with Michigan companies for 18650 batteries. Accordingly, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

We begin with the parties. Defendant LG Chem, Ltd. ("LG Chem") is a South Korean company, headquartered in Seoul, South Korea. R. 3 (Mem. in Supp. Mot. to Dismiss at 1) (Page ID #240). It manufactures the LG HG2 18650 lithium-ion battery as "industrial component products." *Id.* at 2 (Page ID #241). LG Chem asserts that it has "never designed, manufactured, distributed, advertised, or sold any HG2 (or any 18650 lithium ion cells) for use by individual consumers as standalone, replaceable batteries with e-cigarette or vaping devices." *Id.*; *see also* R. 21 (LG Chem's Suppl. Br. at 3) (Page ID #718) ("LG Chem did not serve a consumer market in Michigan for standalone, replaceable lithium-ion batteries."). LG Chem states that its product is "not [a] standalone, replaceable consumer batter[y], and [it was] not designed to be handled by consumers." R. 3 (Mem. in Supp. Mot. to Dismiss at 2) (Page ID #241).

LG Chem has a subsidiary in Michigan—LG Energy Solution Michigan, Inc. f/k/a LG Chem Michigan, Inc. ("LG Energy" or "LGESMI" or "LGCMI"). *Id.* According to LG Chem, LG Energy does not have any role "in the design, manufacture, marketing, distribution, or sale of

any model of LG 18650 lithium ion cells to anyone." *Id.* at 2–3 (Page ID #241–42). LG Energy is not a party to this appeal.

Sandra Sullivan, Plaintiff's spouse, visited Montrose Smokers Palace in Montrose, Michigan[1] to purchase a vaping product for Plaintiff on March 28, 2018. R. 1-1 (Compl. ¶ 15) (Page ID #22); R. 1-1 (Def.'s Initial Disclosures at 1) (Page ID #84). She purchased "a regulated mod manufactured by SMOK, a NITECORE battery charger, [and, relevant here,] four brown LG HG2 18650, 3000 mAh, 3.7V batteries," which are allegedly manufactured by LG Chem. *Id.* ¶ 16 (Page ID #22); R. 10 (Pl.'s Opp'n at 1–2) (Page ID #337–38).

A few months later, in October 2018, Plaintiff had two of LG Chem's "18650 batteries in his left front pocket," which made a loud sound and exploded in his pocket. R. 1-1 (Compl. ¶ 18) (Page ID #22); *see also id* ¶ 19 (Page ID #22). Plaintiff's pants caught fire resulting in, among other things, "[s]evere second and third-degree burns to his left hand and left upper thigh," *id.* ¶ 27 (Page ID #23–24). He required hospitalization, skin-graft surgery, and debridement treatments. R. 10 (Pl.'s Opp'n at 2) (Page ID #338). Plaintiff alleges that he suffered severe scarring, pain and suffering, emotional distress, wage loss, and other economic and non-economic injuries. R. 1-1 (Compl. ¶ 27) (Page ID #23–24). Sullivan's Complaint, filed in the Circuit Court of Genesee County, Michigan, includes one count of negligence, *id.* ¶¶ 28–31 (Page ID #24–26), and one count of gross negligence, *id.* ¶¶ 32–38 (Page ID #26–27).

## B. PROCEEDINGS BEFORE THE DISTRICT COURT AND LIMITED DISCOVERY

Upon removing the lawsuit to federal court, on May 18, 2021, LG Chem moved to dismiss the lawsuit for lack of personal jurisdiction. R. 3 (Mem. in Supp. Mot. to Dismiss) (Page ID #235–64). Defendant argued that the district court sitting in Michigan lacked both general and specific jurisdiction over it. *Id.* ¶¶ 2–3 (Page ID #236). The district court held a hearing on Defendant's motion to dismiss. R. 20 (Hr'g Tr.) (Page ID #645–712). The hearing largely focused on whether Defendant had sufficient contacts with Michigan to satisfy due process. *See generally id.*

---

[1]Defendant contends that it has never sold 18650 batteries to Montrose Smokers Palace. R. 3 (Mem. in Supp. Mot. to Dismiss at 2) (Page ID #241).

During the hearing, Defendant's counsel acknowledged that, unlike in most other states, LG Chem likely had at least some small amount of "sales of [] 18650's into the State of Michigan." R. 20 (Hr'g Tr. at 16) (Page ID #660); *see also id.* at 15 (Page ID #659) ("My general understanding and recollection is that there were some [sales] to Michigan."), 32 (Page ID #676) (stating counsel believed "that there were" a few customers in Michigan to whom LG Chem shipped 18650 batteries). LG Chem argued that, to the extent these contacts existed, they were nevertheless irrelevant and of no consequence in establishing personal jurisdiction because LG Chem never distributed 18650 batteries for the purpose of individual consumer use and those possible customers were "not serving a market for consumers to go buy one of these 18650 cells and put it in their pocket and walk around and use it to power their devices." *Id.* at 20 (Page ID #664). At the end of the hearing, the district court ordered "some limited written jurisdictional discovery on the issue of LG Chem's contacts with Michigan related to the 18650 batteries," *id.* at 64 (Page ID #708), and supplemental briefing, *id.* at 66 (Page ID #710).

Limited discovery revealed that LG Chem sent at least two shipments of 18650 batteries directly into the State of Michigan. *First*, LG Chem shipped one hundred 18650 batteries to a vacuum-cleaner manufacturer in Michigan. R. 24-2 (Ex. 1, Def.'s Response to Pl.'s Req. for Produc. at 2) (Page ID #873); R. 24-5 (Ex. 4, Invoice to Vacuum-cleaner Manufacturer) (Page ID #897); R. 21-4 (Ex. B, Def.'s Response to Pl.'s Req. for Interrogs. at 5–6) (Page ID #807–08); R. 21 (LG Chem's Suppl. Br. at 3–4) (Page ID #718–19) (characterizing the shipment as "a sample shipment of 100 lithium-ion cells" for which it received no revenue). *Second*, LG Chem shipped battery packs that contained 50,277 pounds of 18650 batteries to its subsidiary into Michigan.[2] R. 10-6 (Ex. 5, LG Chem's Import Data at 2) (Page ID #473); R. 17-2 (Ex. A, K. Choi Suppl. Decl. ¶¶ 4–6) (Page ID #544–45). The district court therefore determined that there were at least "two undisputed shipments of 18650s to Michigan." *Sullivan v. LG Chem, Ltd.*,

---

[2]Plaintiff originally pointed the district court to three shipments to LG Chem's subsidiary, R. 10-6 (Ex. 5, LG Chem's Import Data at 2–4) (Page ID #473–75), but the district court excluded two subsidiary shipments from its analysis because "LG Chem submitted an affidavit showing that only one such shipment—which contained over 50,000 pounds of batteries—was for 18650s, while the other two contained 'lithium-ion pouch-type [battery] cells.'" *Sullivan v. LG Chem, Ltd.*, 585 F. Supp. 3d 992, 1003 (E.D. Mich. 2022) (alteration in original); *see also* R. 17-2 (Ex. A, K. Choi Suppl. Decl. ¶¶ 5–6) (Page ID #544–45). The district court considered only the shipment of 18650 batteries "[b]ecause Sullivan never disputed this affidavit and because it is consistent with his statement about shipments of 'lithium-ion batteries.'" *Sullivan*, 585 F. Supp. 3d at 1003. Plaintiff does not challenge that determination on appeal.

585 F. Supp. 3d 992, 1003 (E.D. Mich. 2022). On appeal, LG Chem acknowledges this. *See* Appellee Br. at 7 (acknowledging shipment of 18650 batteries to vacuum-cleaner manufacturer in Michigan); *id.* at 8 (acknowledging shipment of 18650 batteries to its subsidiary in Michigan). Neither party puts forth evidence or addresses whether any of the 18650 batteries that LG Chem shipped into Michigan was ultimately one of the batteries that injured Plaintiff.

Limited discovery further revealed that LG Chem executed "two supplier agreements . . . with Michigan companies relating to 18650 batteries." *Sullivan*, 585 F. Supp. 3d at 1003; *see also* R. 21 (LG Chem's Suppl. Br. at 5) (Page ID #720) (describing agreements as "agreements with manufacturers in Michigan for the purchase of 18650 lithium-ion cells or battery packs containing 18650 lithium-ion cells for 2016-2020"). *First*, LG Chem executed an agreement with that same vacuum-manufacturing company, with headquarters in Michigan, to purchase LG Chem's 18650 batteries. *See* R. 24-6 (Ex. 5, Vacuum-manufacturing Co. Contract) (Page ID #917–20); R. 24-2 (Ex. 1, Def.'s Response to Pl.'s Req. for Produc. at 5) (Page ID #876); R. 21 (LG Chem's Suppl. Br. at 5) (Page ID #720). Under this contract, LG Chem shipped 18650 batteries directly into Michigan. *See* R. 21-4 (Ex. B, Def.'s Response to Pl.'s Req. for Interrogs. at 5–6) (Page ID #807–08); R. 24-2 (Ex. 1, Def.'s Response to Pl.'s Req. for Produc. at 2) (Page ID #873); R. 24-5 (Ex. 4, Invoice to Vacuum-cleaner Manufacturer) (Page ID #897). *Second*, LG Chem contracted with a Michigan-based automaker-product manufacturer. R. 24-7 (Ex. 6, Automaker-product Manufacturer Contract) (Page ID #922–46); R. 24-2 (Ex. 1, Def.'s Response to Pl.'s Req. for Produc. at 5–6) (Page ID #876–77); R. 21 (LG Chem's Suppl. Br. at 5) (Page ID #720). This contract was originally entered into in 2016 and then supplemented in 2019 for the purchase of battery packs. R. 24-7 (Ex. 6, Automaker-product Manufacturer Contract) (Page ID #922–46). LG Chem never shipped 18650 batteries *into Michigan* under this contract (and instead shipped the batteries to a different state) but the contract "shall be considered as a contract made and to be performed in the State of Michigan" and contains a Michigan forum-selection clause (wherein both parties waived any personal-jurisdiction defenses). R. 24-7 (Ex. 6, Automaker-product Manufacturer Contract at 20) (Page ID #945); *see also* R. 24-5 (Ex. 4, Invoices) (Page ID #898–915) (listing an out-of-state address as the final destination of shipment); R. 21 (LG Chem's Suppl. Br. at 5) (Page ID #720) (explaining LG Chem never shipped any 18650 batteries to the automaker-product manufacturer *in Michigan*).

The district court granted LG Chem's motion to dismiss. *Sullivan*, 585 F. Supp. 3d at 1008–09. It determined "that the exercise of personal jurisdiction over LG Chem comports with due process," *id.* at 1007, but found that Plaintiff had not sufficiently addressed whether the exercise of jurisdiction satisfied Michigan's long-arm statute, Mich. Comp. Laws § 600.715, *id.* at 1008. Plaintiff timely appealed the final judgment dismissing the case.

## C.  SIMILAR LAWSUITS AGAINST LG CHEM

Michael Sullivan is not the only individual seeking to hold LG Chem liable for injuries caused by its 18650 batteries. Over a dozen people have filed lawsuits against LG Chem across the country. Many cases have been dismissed for lack of personal jurisdiction. *See, e.g.*, *State ex rel. LG Chem, Ltd. v. McLaughlin*, 599 S.W.3d 899, 901–02 (Mo. 2020) (finding no personal jurisdiction where LG Chem never shipped its 18650 batteries into the forum state). But where LG Chem has more contacts with the forum states, the cases have survived. *See Berven v. LG Chem, Ltd.*, No. 1:18-CV-01542-DAD-EPG, 2019 WL 4687080, at *1–2 (E.D. Cal. Sept. 26, 2019) (finding personal jurisdiction because of LG Chem's direct shipments of the 18650 batteries into California); *Tieszen v. EBay, Inc.*, No. 4:21-CV-04002-KES, 2021 WL 4134352, *5–7 (D.S.D. Sept. 10, 2021) (finding personal jurisdiction because LG Chem sells and distributes lithium ion batteries, including the 18650 batteries, in the forum state). We find these cases informative because they demonstrate that other courts have exercised personal jurisdiction over LG Chem when LG Chem conducts business related to its 18650 batteries in or ships its 18650 batteries into the forum state.

## II.  STANDARD OF REVIEW

"We review de novo a" district court's "dismissal for lack of personal jurisdiction." *Indah v. SEC*, 661 F.3d 914, 920 (6th Cir. 2011). Dismissal for lack of personal jurisdiction "under Rule 12(b)(2) involves burden shifting: after the plaintiff makes a prima facie case for personal jurisdiction, which can be done 'merely through the complaint,' the burden shifts to the defendant." *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022) (quoting *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020)). When the burden shifts to the defendant, its "motion to dismiss must be supported by evidence." *Id.* The

burden then returns "to the plaintiff, 'who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Id*. at 437–38 (quoting *Malone*, 965 F.3d at 504). "We 'must view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh the controverting assertions of the party seeking dismissal.'" *Id.* at 438 (quoting *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021)).

## III.  PERSONAL JURISDICTION

"When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021). Personal jurisdiction can be general or specific. *Malone*, 965 F.3d at 501. "General jurisdiction exists when the defendant's affiliations with the forum state are 'so continuous and systematic as to render the defendant essentially at home' there." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiff does not appeal the district court's determination that it lacked general jurisdiction over LG Chem.

Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 502 (quoting *Goodyear*, 564 U.S. at 919). "For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). This appeal concerns both the Michigan long-arm statute and constitutional due process.

### A.  MICHIGAN'S LONG-ARM STATUTE

Michigan has numerous long-arm statutes. *See* Mich. Comp. Laws §§ 600.701–600.735. Relevant here is § 600.715, which establishes when Michigan has specific jurisdiction[3] over a corporation. It enumerates a list of relationships (and the circumstances creating them) between

---

[3]Specific jurisdiction is sometimes referred to as "limited personal jurisdiction." *See, e.g.*, Mich. Comp. Laws § 600.715.

a defendant and Michigan that permit the exercise of personal jurisdiction over the defendant. *Id.* § 600.715. It reads:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships: (1) The transaction of any business within the state. (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort. . . .

*Id.*

The district court observed a difference in the language and structure between the constitutional standard for personal jurisdiction and § 600.715. *See Sullivan*, 585 F. Supp. 3d at 1007–08. The Due Process Clause requires that a "defendant . . . purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state," *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968))), "[t]he plaintiff's claims . . . 'arise out of or relate to the defendant's contacts' with the forum," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017)) and "the exercise of jurisdiction over the defendant [be] reasonable," *Air Prods.*, 503 F.3d at 550 (quoting *S. Mach. Co.*, 401 F.2d at 381). Michigan's § 600.715, by contrast, permits the exercise of personal jurisdiction over a defendant for claims against "corporation[s] arising out of the act or acts which create" one of the relationships between the corporation and Michigan enumerated in the statute. Mich. Comp. Laws § 600.715. Given that the due-process standard also includes the phrase "relate[s] to" and § 600.715 enumerates several broad relationships that can give rise to personal jurisdiction, the district court posited that courts likely need to conduct separate analyses to determine whether they could exercise personal jurisdiction over the defendant. *See Sullivan*, 585 F. Supp. 3d at 1007–08. Because the district court determined that Plaintiff had not independently and sufficiently addressed § 600.715, it dismissed Plaintiff's action, despite finding that due process

allowed it to exercise jurisdiction over LG Chem. *Id.* at 1008. We address each of these points in turn.

### 1. Preservation of the Long-arm Statute Arguments

As a preliminary matter, LG Chem now argues that "Plaintiff waived his argument that § 600.715 is satisfied by failing to raise that argument before the district court." Appellee Br. at 13; *see also id.* at 12, 14–17. But the proceedings below reveal a more complicated and nuanced story. To determine whether Plaintiff failed to preserve his long-arm-statute argument, we look to the proceedings below.

LG Chem's motion to dismiss argued that a district court sitting in Michigan lacked both general and specific jurisdiction over LG Chem. R. 3 (Mem. in Supp. Mot. to Dismiss ¶¶ 2–3) (Page ID #236). Specific jurisdiction, LG Chem contended, did not exist because its contacts with Michigan satisfied neither Michigan's long-arm statute for specific jurisdiction for a corporation, Mich. Comp. Laws § 600.715, nor the Due Process Clause. *Id.* ¶ 3 (Page ID #236). Specifically, with regards to the long-arm statute, LG Chem argued that "Plaintiff makes no allegations of any contacts between LG Chem and Michigan related to his suit," R. 3 (Mem. in Supp. Mot. to Dismiss at 11) (Page ID #250), that could enable Plaintiff's action to "arise out of" an act by LG Chem that created one of the relationships enumerated in the statute, *see also* Mich. Comp. Laws § 600.715.

In response, Plaintiff, perhaps mistakenly, argued that LG Chem's contacts with Michigan satisfied Michigan's general jurisdiction long-arm statute (Mich. Comp. Laws § 600.711), rather than the specific jurisdiction statute (*id.* § 600.715). *See* R. 10 (Pl.'s Opp'n at 8) (Page ID #344). Plaintiff then proceeded to argue that exercising jurisdiction over Defendant satisfied due process. *Id.* In LG Chem's reply brief, LG Chem devoted two sentences to § 600.715, noting that Plaintiff failed to address the long-arm statute (§ 600.715), and then LG Chem *immediately* moved on to its due-process argument. R. 17 (Def.'s Reply Br. at 3) (Page ID #530).

At the hearing, the district court recited to the parties Sixth Circuit precedent interpreting the scope of Michigan's long-arm statute and asked the parties whether Michigan's long-arm statute and the Due Process Clause required separate analysis. The district court stated:

> [W]e've got the Sixth Circuit case law that indicates, "[w]hen a state's long-arm statute reaches as far as the limits of the due process clause, the two inquiries merge and the court need only determine whether the assertion of personal jurisdiction violates constitutional due process." Is there any dispute here that Michigan's long-arm statute reaches as far as the limits of the due process clause such that we can focus on the due process arguments?

R. 20 (Hr'g Tr. at 5) (Page ID #649). Counsel for Plaintiff responded no. *Id.* LG Chem's counsel stated:

> [W]e don't concede that the long-arm statute is satisfied; however, I did not intend to spend time on that today because I think the due process issue is so easily resolved and there are authorities that say The Court doesn't have to go through the long-arm statute analysis, if due process is not met then The Court, essentially, does not have to spend time on the long-arm and that was the way I would approach the hearing today.

*Id.* at 6 (Page ID #650).

The district court asked if there was "different analysis," *id.*, and whether, "if I found that that [Michigan's general personal jurisdiction long-arm statute] is not satisfied under *Daimler*, for example, then I'd still have to go to 600.715 which is limited personal jurisdiction which *seems like it gets me to a similar, if not the same inquiry as under the due process analysis*." *Id.* at 7 (Page ID #651) (emphasis added). LG Chem's counsel responded: "*That's right*. And so while I don't concede that the long-arm statute is satisfied, I was planning to focus my argument *only* on the due process issue." *Id.* (emphasis added). The district court concluded the exchange by stating, "Okay. Very good. And it sounds like [Plaintiff's counsel] is as well." *Id.* Counsel for the parties then addressed personal jurisdiction under the Due Process Clause only.

In LG Chem's Supplemental Brief, it argued that general jurisdiction was not at issue, R. 21 (LG Chem's Suppl. Br. at 6) (Page ID #721), and argued that Michigan lacked specific jurisdiction over LG Chem because "Plaintiff's claims do not 'arise out of or relate to' these activities, and specific jurisdiction is lacking based on both Michigan's long-arm statute and due

process." *Id.* at 9 (Page ID #724). This first clause quotes the due-process standard, *see, e.g.*, *Ford*, 141 S. Ct. at 1025 ("The plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with the forum." (quoting *Bristol-Myers*, 137 S. Ct. at 1780)). It is true that in some places in its brief, LG Chem tailored its language specifically to each source of personal jurisdiction,[4] but LG Chem did not *explicitly* argue that even if its contacts satisfied due process they nonetheless failed under Michigan's long-arm statute. *See generally* R. 21 (LG Chem's Suppl. Br.) (Page ID #713–25). LG Chem's Supplemental Brief relied on the same analysis for its § 600.715 and due-process arguments. *See id.* at 8–9 (Page ID #724–25). Plaintiff's Supplemental Brief addressed only due process. *See* R. 24 (Pl.'s Suppl. Br. at 4–9) (Page ID #863–68). Specifically, Plaintiff argued that consistent with Supreme Court precedent, the lawsuit "relates to" LG Chem's contacts with Michigan. *See, e.g.*, *id.* at 6–7 (Page ID #865–66).

To summarize, Plaintiff was sloppy in his briefing and neglected to address § 600.715. To Plaintiff's credit, Sixth Circuit caselaw states that "Michigan's long-arm statute 'extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one.'" *See, e.g.*, *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Plaintiff's counsel told the district court that it understood that Michigan's long-arm statute extended to the limits of the Due Process Clause, R. 20 (Hr'g Tr. at 5) (Page ID #649), and then in Plaintiff's supplemental briefing addressed only the Due Process Clause, R. 24 (Pl.'s Suppl. Br. at 4–9) (Page ID #863–68). Defendant argued that Plaintiff needed to satisfy § 600.715 but never argued explicitly before the district court that the two inquiries differed. *See, e.g.*, R. 17 (LG Chem's Reply Br. at 3) (Page ID #530); R. 21 (LG Chem's Suppl. Br at 8–9) (Page ID #723–24).

---

[4]For instance, LG Chem stated that "[e]ven if jurisdictional discovery had revealed that LG Chem extensively supplied 18650 lithium-ion cells to consumer product manufacturers *in Michigan* to be incorporated with protective circuitry in battery packs (which it did not), that would not support the exercise of specific jurisdiction because such activities would not *give rise* to Plaintiff's claims, as required to satisfy Michigan § 600.715, and would *not relate* to Plaintiff's claims, as required to satisfy due process." *See, e.g.*, R. 21 (LG Chem's Suppl. Br.) (Page ID #723–24) (second and third emphasis added).

This situation is unique and distinct from the typical instances of forfeiture. Though Plaintiff did not independently articulate that he satisfied the long-arm statute before the district court, at the hearing he argued that the two standards were the same based on Sixth Circuit caselaw—believing that he was in fact addressing the very issue that LG Chem argues he failed to preserve. Although this court generally declines to consider arguments that were not timely raised before the district court, "[w]e have, on occasion, deviated from the general rule in 'exceptional cases or particular circumstances or when the rule would produce a plain miscarriage of justice.'" *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) (quoting *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988)). Because of Plaintiff's reliance on Sixth Circuit caselaw and the clarity by which the parties addressed the issue on appeal, we will consider the merits.

## 2. Whether the Michigan's Long-arm Statute and the Due-Process Analyses Merge Into One

Like the district court, we believe that Michigan's interpretation of its long-arm statute requires a separate analysis from the Due Process Clause. The district court's thorough order highlights the nuances of this inquiry. *See Sullivan*, 585 F. Supp. 3d at 1007–08. Plaintiff points us to our numerous general statements that "Michigan's long-arm statute 'extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one.'" *See, e.g.*, *AlixPartners*, 836 F.3d at 549 (quoting *Mich. Coal.*, 954 F.2d at 1176). Yet LG Chem (on appeal) and the district court contend that such statements oversimplify and overgeneralize the matter, and that there are instances in which Michigan's long-arm statute does not overlap with the Due Process Clause. To answer the question of the scope of the Michigan statute, we consider published decisions by the Michigan courts, and in the absence of such decisions, "it is the obligation of this Court to exercise [our] best judgment as to the interpretation which the Supreme Court of [Michigan] would place upon this legislation." *Kroger Co. v. Dornbos*, 408 F.2d 813, 816 (6th Cir. 1969).

In *Mallory v. Conida Warehouses, Inc.*, 317 N.W.2d 597 (Mich. Ct. App. 1982), the Court of Appeals of Michigan determined that because, *categorically*, the "Michigan courts lack jurisdiction over" another state, "on statutory grounds" under the state's long-arm statutes,

it need not conduct the constitutional analysis. *Id.* at 600. *Mallory* considered unique facts; it addressed "whether Michigan has a statutory basis for exercising long-arm jurisdiction over the State of Idaho," *id.* at 599, to adjudicate a claim that Idaho "negligently inspect[ed] kidney beans grown in Idaho," *id.* at 598. After examining Michigan's numerous long-arm statutes that permit actions against "an individual or his agent," "a corporation or its agent," "a partnership" or an agent thereof, or "a partnership association or an unincorporated voluntary association, or an agent thereof," it determined that "[n]one of these statutes expressly permits a Michigan court to exercise long-arm jurisdiction over another state." *Id.* at 599. Because a sister state categorically did not fall under any of the long-arm statutes, the Michigan Court of Appeals thus ended its analysis without considering the Due Process Clause, explaining that, "[e]ven if the" due-process test were satisfied, the absence of "statutory authority" precluded the exercise of personal jurisdiction. *Id.* at 601.

*Mallory* acknowledged that "[w]hile it is true that in *Sifers v. Horen*, 385 Mich. 195, 188 N.W. 623 (1971), the [Michigan Supreme] Court did indicate that the Legislature intended full expansion of long-arm jurisdiction, *Sifers* was a case that clearly involved an individual, and the only question before the Court was whether one of the statutory criteria was met." *Id.* at 600. However, the *Mallory* case involved different circumstances, requiring it to "decide whether a sister state was intended to be covered under the provisions for suits against individuals, corporations, partnerships and voluntary associations or their agents." *Id.* *Mallory* demonstrates that even if the exercise of jurisdiction *may* satisfy the Due Process Clause, such an exercise may still fail under the Michigan's various long-arm statutes thereby depriving courts sitting in Michigan of personal jurisdiction over the defendant. Though *Mallory* does not reach a holding on the scope of the long-arm statutes, it comments on the intended wide reach of the Michigan long-arm statutes. *See id.*

The Michigan Supreme Court clarified its interpretation of its long-arm statutes in *Green v. Wilson*, 565 N.W. 2d 813 (Mich. 1997). *Green* began by distinguishing two different types of long-arm statutes: "self-adjusting" and "laundry-list" statutes. *Id.* at 816. "[S]elf-adjusting" statutes "stretch[] *automatically* to extend jurisdiction wherever the Due Process Clause permits." *Id.* (emphasis added). They function "[l]ike a complete solar eclipse," because "the

due process and statutory analyses overlap entirely" and "only a one-step analysis is necessary." *Id.* On the other hand, "[l]aundry-list statutes enumerate specific acts that give rise to personal jurisdiction. They do not permit a one-step analysis, even in circumstances where they are thought to be 'coextensive' with due process." *Id. Green* explained that the analysis under a "laundry-list" statute "is akin to a partial solar eclipse, with part of the statute granting jurisdiction within the permissible constitutional scope and part of the statute possibly outside it." *Id.* Michigan has a "laundry-list" statute. *Id.*; *see also id.* at 815 (considering long-arm statutes more generally and noting that "there may be instances where a state court will lack the power to exercise personal jurisdiction over a defendant, even though jurisdiction may be constitutionally permissible").

*Green* then explained what it means to say that Michigan's long-arm statutes are "coextensive with due process": "[*I*]*f* a defendant's actions or status fit within a provision of a long-arm statute, jurisdiction may be extended as far as due process permits. The long-arm statute is coextensive with due process insofar as the statute is limited by due process, and, therefore, the statute and due process share the same *outer* boundary." *Id.* at 816 (emphasis added) (footnote omitted). But "[t]he coextensive nature of Michigan's long-arm jurisdiction becomes pertinent *only if* the particular acts or status of a defendant *first fit* within a long-arm statute provision." *Id.* (emphasis added). It explained that "this does not mean that the two are equal and require a single inquiry based solely upon due process restrictions." *Id.* at 816–17. The Michigan Supreme Court then instructed the application of a two-prong approach: "The State of Michigan may exercise limited personal jurisdiction over [a defendant] if two conditions are met: First, [the defendant]'s conduct must fall within a provision of Michigan's long-arm statutes" and "[s]econd, the exercise of jurisdiction must comport with due process." *Id.* at 817.

Michigan courts continue to cite *Green*'s proposition that determining personal jurisdiction requires a two-prong analysis, instructing that "[b]oth prongs of this analysis must be satisfied for a Michigan court to properly exercise limited personal jurisdiction over a nonresident." *Yoost v. Caspari*, 813 N.W.2d 783, 791 (Mich. Ct. App. 2012) (per curiam); *see e.g.*, *id.* (declining to "consider whether the exercise of limited personal jurisdiction over [counter-defendant] comports with due process because we conclude that [counter-plaintiff]

failed to establish a prima facie case against [counter-defendant] that satisfied" the long-arm statute); *W.H. Froh, Inc. v. Domanski*, 651 N.W.2d 470, 475 (Mich. Ct. App. 2002) ("A personal jurisdiction analysis involves a two-fold inquiry.").

Additionally, several Michigan courts have characterized Michigan's personal-jurisdiction analysis as involving two *sequential* steps. *See, e.g.*, *Starbrite Distrib., Inc. v. Excelda Mfg. Co.*, 562 N.W.2d 640, 641 (Mich. 1997) (stating that "[*f*]*irst*, we must decide whether . . . the long-arm statute" is satisfied and "[*s*]*econd*, *if we find that* [*statute i*]*s satisfied, then* we must also decide" the due-process question (emphasis added)); *Mallory*, 317 N.W.2d at 599 ("*Before* any constitutional considerations are considered, it is *necessary* to determine whether Michigan has a statutory basis for exercising long-arm jurisdiction." (emphasis added)); *Yoost*, 813 N.W.2d at 791 (same); *Metry v. Coastal Cmty. Fed. Credit Union*, No. 354372, 2021 WL 4005883, at *2 (Mich. Ct. App. Sept. 2, 2021) (same). These cases instruct that the determination of whether a court sitting in Michigan can exercise personal jurisdiction over a defendant requires two separate analyses.

Our statement that "Michigan's long-arm statute 'extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one,'" *AlixPartners*, 836 F.3d at 549 (quoting *Mich. Coal.*, 954 F.2d at 1176)), and other similar statements,[5] ultimately rely on cases that predate the Michigan Supreme Court's 1997 decision in *Green*. For instance, *AlixPartners*, 836 F.3d at 549, quoted *Michigan Coalition*, 954 F.2d at 1176, which we decided in 1992—five years before the Michigan Supreme Court decided *Green*. The Michigan Court of Appeals has also done this. In 1999—overlooking *Green* and citing a case that predated *Green*—the Michigan Court of Appeals stated that "where it is found that personal jurisdiction does not offend due process, it consequently cannot violate this state's long-arm statute." *Bell v. Mannausa*, No. 209117, 1999 WL 33434986, at *3 (Mich. Ct. App. 1999)

---

[5]*See also MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) ("The Michigan long-arm statute, however, 'extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one.'" (quoting *AlixPartners*, 836 F.3d at 549)); *Adelson v. Ocwen Fin. Corp.*, No. 17-1917, 2018 WL 7226966, at *2 (6th Cir. Aug. 20, 2018) (order) ("Because Michigan's 'long-arm statute has been interpreted to grant the broadest basis for jurisdiction consistent with due process,' the two inquiries merge: If the exercise of personal jurisdiction 'does not offend due process, it consequently cannot violate [Michigan's] long-arm statute.'" (alteration in original) (quoting *Comm'r of Ins. v. Arcilio*, 561 N.W.2d 412, 421 (Mich. Ct. App. 1997)).

(per curiam) (quoting *Ins. Comm'r of Mich. v. Arcilio*, 561 N.W.2d 412, 421 (Mich. Ct. App. 1997) (decided on Jan. 1, 1997)).  But *Green* requires that we conduct two separate inquiries when determining whether a court sitting in Michigan has personal jurisdiction over a defendant.

### 3. The Scope of § 600.715

We next consider the scope of Michigan's long-arm statute and whether LG Chem and Michigan had a sufficient relationship under § 600.715 to satisfy long-arm jurisdiction.  We return to the statute itself, which provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships: (1) The transaction of any business within the state.  (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort. . . .

Mich. Comp. Laws § 600.715; *see also Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 413 (Mich. Ct. App. 2001) ("Well-settled principles of statutory interpretation require us to look to the plain language of M.C.L. § 600.715(1) to determine whether defendant falls within the state's long-arm jurisdiction.").  The statute allows courts sitting in Michigan to exercise personal jurisdiction over a defendant when a "plaintiff[] . . . show[s] that their cause of action arose out of one of the relationships enumerated in the statute." *Schneider v. Linkfield*, 198 N.W.2d 834, 835–36 (Mich. Ct. App. 1972) ("The cause of action did arise out of the use of personal property constructively situated within the state of Michigan."), *aff'd*, 209 N.W.2d 225 (Mich. 1973); *see also Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 905, 908 (6th Cir. 1988) (characterizing the existence of the relationship as criterion one, *see id.* at 905, and whether the claim arose of out the relationship as criterion two, *id.* at 908); 1 Mich. Pl. & Pr. § 2:35 (2d ed.).  Here, Plaintiff argues that at least two subsections of § 600.715 support the exercise of personal jurisdiction.  Appellant Br. at 18–22.  We examine each below.

Beginning with § 600.715(1), the statutory phrase "transaction of any business within the state," Mich. Comp. Laws § 600.715(1), is broad and "[t]he word 'any' means just what it says.  It includes 'each' and 'every.'  It comprehends 'the slightest.'" *Sifers*, 188 N.W.2d at 624 n.2

(citing *Harrington v. Inter-State Bus. Men's Accident Ass'n*, 178 N.W. 19 (Mich. 1920); *Gibson v. Agric. Life Ins. Co. of Am.*, 276 N.W. 450 (Mich. 1937)). Thus, when a "defendant conduct[s] even the slightest act of business in Michigan," a sufficient transaction of business occurs under § 600.715(1). *Lanier*, 843 F.2d at 906. Here, LG Chem's two shipments of its batteries and its two supplier contracts are sufficient evidence of transactions of business within Michigan, satisfying the first criterion of § 600.715(1); *see also Oberlies*, 633 N.W.2d at 413.

But the long-arm statute "exposes a non resident to suit in Michigan *only for* a cause which arose out of the relationship serving as a basis for such jurisdiction." *Sifers*, 188 N.W.2d at 623 (emphasis added); *see also Electrolines, Inc. v. Prudential Assurance Co.*, 677 N.W.2d 874, 888 (Mich. Ct. App. 2003) (finding no personal jurisdiction under § 600.715(1) when, "even assuming arguendo that [the defendant insurance company]'s registration with the Michigan Insurance Commissioner is an act that could constitute a 'transaction of any business' under MCL 600.715(1), plaintiff's suit does not arise from [the defendant]'s registration, but from a fire of an insured building in Liberia"). We observe that Michigan courts have liberally construed the long-arm statute's arising-out-of language. For example, in *Schneider*, the Michigan Court of Appeals found that personal jurisdiction existed over a defendant who was a former Michigan resident in an action brought by a plaintiff for injuries that the plaintiff had suffered in a car accident with the defendant *in Indiana*. 198 N.W.2d at 834–36. *Schneider* examined the long-arm statute's third relationship:[6] "The ownership, use, or possession of any real or tangible personal property situated within the state." *Id.* at 835 (quoting Mich. Comp. Laws § 600.705(3)). The court held that the plaintiff's claim "did arise out of the use of personal property constructively situated within the state of Michigan" because the defendant's car was titled in Michigan, even though the accident occurred in Indiana. *Id.* at 836.

Similarly, in *Oberlies*, the Michigan Court of Appeals considered whether it could assert personal jurisdiction over a defendant in an action brought by a Michigan resident who suffered injury at the defendant's ski facility in Canada. 633 N.W.2d at 411. In *Oberlies*, the "defendant engaged in widespread advertising that had a clear purpose of soliciting business from Michigan residents." *Id.* at 413. Many of the advertisements "highlighted the proximity of defendant's ski

---

[6]The Michigan Court of Appeals examined § 600.705(3), which is identical in this regard to § 600.715(3).

facility to Michigan, provided detailed directions to the facility from Michigan, and highlighted the apparent benefits of skiing in Ontario as opposed to Michigan." *Id.* at 414. According to the plaintiff, the "defendant's advertisement led her to establish a business relationship with defendant." *Id.* The Michigan Court of Appeals found that the advertisements "constituted the transaction of business in Michigan" and concluded that, "[u]nder these circumstances," § 600.715(1) permits the exercise of personal jurisdiction. *Id.* Yet—despite finding § 600.715(1) satisfied—the court then determined that due-process principles nonetheless prohibited the exercise of personal jurisdiction because the plaintiff's claim was too "attenuated" from the defendant's advertising in Michigan and thus did not "arise from the circumstances creating the jurisdictional relationship between the defendant and" Michigan. *Id.* at 416 (quoting *Rainsberger v. McFadden*, 436 N.W.2d 412, 413 (Mich. Ct. App. 1989)); *see also id.* at 417. *Oberlies*'s determination that § 600.715(1) allowed for what the Due Process Clause prohibited—the exercise of personal jurisdiction when the plaintiff's claim "was merely tangentially related to" the defendant's transaction of business in Michigan—speaks to the breadth of Michigan's long-arm statute and its arising-out-of language. *Id.* at 417. In this particular instance, it is arguable that Plaintiff can show that his action arises from LG Chem's transaction of business in Michigan. Because we conclude, however, that Plaintiff satisfies the long-arm statute under § 600.715(2), we need not decide whether Plaintiff also satisfies § 600.715(1).

According to Plaintiff, a second enumerated relationship between LG Chem and Michigan—created by "[t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort" gives rise to personal jurisdiction. *See* Mich. Comp. Laws § 600.715(2). "A plain language reading of these words reveals that *either* the tortious conduct *or* the injury must occur in Michigan." *Green*, 565 N.W. 2d at 817 (emphasis added) (finding no jurisdiction where neither the act nor the consequence occurred in Michigan). Thus, Michigan courts tell us that, under § 600.715(2), when a "defendant's tortious conduct [or] the consequent injury to [a] plaintiff[] occur[s] in Michigan, [a] defendant bec[o]me[s] subject to the exercise of personal jurisdiction by Michigan courts." *See W.H. Froh*, 651 N.W.2d at 477; *see also Dobronski v. United Final Expense Servs., Inc.*, No. 357057, 2022 WL 1194419, at *3 (Mich. Ct. App. Apr. 21, 2022), *appeal denied*, 979 N.W.2d 832 (Mich. 2022) ("Michigan's

long-arm statutes bring within their grasp individuals and corporations who, personally or through their agents . . . commit a tort in Michigan[] *or* cause an act to be done that results in an action for tort in Michigan." (emphasis added)). Thus, § 600.715(2) encompasses a defendant's "acts outside the state which have consequences inside the state." *Dornbos v. Kroger Co.*, 157 N.W.2d 498, 500 (Mich. Ct. App. 1968); *see also* 1 Mich. Pl. & Pr. § 2:38 (2d ed.) (explaining that § 600.715(2) covers "acts outside [Michigan] that have consequences inside [Michigan]"); 6 Mich. Civ. Jur. Corps. § 538 ("[Section 600.715(2)] applies to situations in which the act or conduct of the foreign corporation outside of Michigan leads to an event in Michigan that gives rise to the tort claim").

Here, Plaintiff contends that Defendant's alleged out-of-state acts (negligently making the 18650 battery) caused a consequence to occur (the explosion of the battery in Plaintiff's pocket)—*in Michigan*, which gives rise to his negligence action. The facts before us differ from *Green*. The *Green* court asked (1) where the act itself occurred and (2) where the consequences of the act occurred. 565 N.W. 2d at 817. Because the act of dangerously driving occurred in Canada and "[t]he consequences of the act"—the plaintiff's injury—"also occurred in Canada," the defendant's "acts d[id] not fit under the . . . long-arm statute." *Id.* The present circumstances also differ from *Metry*, where the Michigan Court of Appeals found that a Michigan court could not exercise personal jurisdiction over the defendants because their acts occurred outside of Michigan and "it [wa]s difficult to conclude that the effects of the alleged act were felt in Michigan," 2021 WL 4005883, at *3, *see also id.* at *4. In *Woods v. Edgewater Amusement Park*, where a Florida corporation manufactured an amusement-park ride in Florida and sold it to an individual in "New Jersey for installation at Haslett, Michigan," the Michigan Supreme Court found that both § 600.715(1) and (2) were satisfied because the plaintiff was injured on the ride *in Michigan*. *See* 165 N.W.2d 12, 14 (Mich. 1969); *see also id.* at 13–17 (considering the long-arm statute and the Due Process Clause together).

LG Chem asks us to interpret § 600.715(2) in a manner that limits specific personal jurisdiction to instances in which a defendant causes a consequence to occur in Michigan that results in a tort action only when the "defendant has some role in causing its product to be used in Michigan." Appellee Br. at 26. LG Chem contends that *Woods* found personal jurisdiction

under § 600.715(2) only because the *Woods* defendant sold the injuring product "to a New Jersey individual specifically 'for installation at Haslett, Michigan.'" Appellee Br. at 25 (quoting *Woods*, 165 N.W.2d at 14). But such an interpretation lacks support in the reasoning of *Woods*'s § 600.715(2) holding or the text of § 600.715(2) itself. Because *Woods*, which was decided before *Green*, addressed § 600.715(2) and the Due Process Clause together, we must look with a careful eye to its § 600.715 analysis only, and not incorporate its due-process analysis into our interpretation of § 600.715.

In *Woods*, when describing the facts of the case, the Michigan Supreme Court noted that the manufacturing defendant from Florida had sold the injuring ride "to a Roger Haney in the State of New Jersey for installation at Haslett, Michigan; that said Roger Haney sold said amusement ride to Harry Stahl, individually, and in July 1959, and subsequently as an accommodation to Roger Haney who had purchased said ride on installment contract, B. A. Schiff & Associates, Inc., refinanced the ride at the Coral Gables First National Bank in Coral Gables, Florida, to assist Harry Stahl to acquire same." 165 N.W.2d at 14. The court never emphasized that the defendant was specifically aware of the Michigan location of the installation, *see id.*, and never relied on the fact that the defendant perhaps acknowledged the product's installation location in reaching its § 600.715(2) holding that the record "satisfies the Michigan statutory requirement that defendant [had] . . . caus[ed] an act to be done or a *consequence to occur* resulting in the present actions for tort," *id.* at 17 (emphasis in original); *see also id*. at 15–16.

LG Chem points to what it believes is a similar factual distinction in *Behlke v. Metalmeccanica Plast, S.P.A.*, 365 F. Supp. 272 (E.D. Mich. 1973). Appellee Br. at 25. Here, too, *Behlke* does not support LG Chem's position. In *Behlke*, the district judge in the Eastern District of Michigan determined that the court could exercise personal jurisdiction over an Italian company that manufactured a product that it sold to a Canadian distributor that then sold it to a company that resold it to a Michigan company whose employee was injured by the product. *Id.* at 273. After noting the "broad[ness]" of Michigan's long-arm statute and discussing the *Woods* holding, it concluded—very emphatically—that "[i]t is quite apparent that the Michigan Supreme Court would hold the Italian defendant . . . to be properly before this court on the

negligence count, it certainly having been properly alleged that the defendant caused a consequence to occur within this state." *Id.* at 274. *Behlke* makes no mention of the defendant's "role in causing its product to be used in Michigan." Appellee Br. at 26; *see generally* 365 F. Supp. 272.

At bottom, Defendant points to no authority that suggests that § 600.715(2) independently[7] requires that a defendant specifically contemplate the forum state when engaging in acts that cause the consequence to occur in Michigan. It has not provided us with any authority, and we have found none, to support its bold claim that personal jurisdiction under § 600.715(2) exists only when a defendant's product reaches the intended recipient rather than an unintended recipient. As *Behlke* described, § 600.715 is "broad" and the Michigan courts have interpreted it liberally to permit a wide-ranging exercise of personal jurisdiction. 365 F. Supp. at 274. Pursuant to the plain meaning of § 600.715(2), the consequences of LG Chem's alleged negligent manufacture or design of the 18650 batteries occurred in Michigan when LG Chem's 18650 batteries exploded in Plaintiff's pocket, resulting in an action in tort. Because Plaintiff's Complaint contains sufficient allegations that Plaintiff suffered an injury in Michigan due to LG Chem's allegedly tortious conduct, we conclude that Plaintiff has carried his statutory burden under § 600.715(2). *See Peters*, 40 F.4th at 437–38. Therefore, we hold that the district court, sitting in Michigan, has the power under Michigan's long-arm statute to exercise personal jurisdiction over LG Chem.

## B.  THE DUE PROCESS CLAUSE

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford*, 141 S. Ct. at 1024. We apply "a three-part test to determine whether the exercise of personal jurisdiction . . . comports with constitutional due process." *AlixPartners*, 836 F.3d at 549. "First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Id.* (emphasis in original) (quoting *Air Prods.*, 503 F.3d at 550). Second, the claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford*, 141 S. Ct. at 1025 (quoting

---

[7]Of course, the defendant's contacts with Michigan and its relation to the plaintiff's claims must still comport with the Due Process Clause, which we address below.

*Bristol-Myers*, 137 S. Ct. at 1780); *see also AlixPartners*, 836 F.3d at 549. Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners*, 836 F.3d at 549–50 (quoting *Air Prods.*, 503 F.3d at 550).

Without conceding that the district court properly determined that LG Chem purposefully availed itself of the privileges of conducting activities in Michigan, LG Chem does not make any argument challenging purposeful availment. *See* Appellee Br. at 29, 33. Under the Due Process Clause, LG Chem must have "take[n] 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 141 S. Ct. at 1024–25 (second alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). This requires a showing "that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The purposeful-availment requirement prevents the exercise of jurisdiction over a defendant "solely as a result of . . . the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). "'It is the **quality** of [the] contacts,' and not their number or status, that determines whether they amount to purposeful availment." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (emphasis and alteration in original) (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)).

Based on LG Chem's direct shipments of the 18650 batteries into Michigan and its supplier contracts, LG Chem purposefully availed itself of the benefits of doing business in Michigan and the protections of Michigan law. *See Burger King*, 471 U.S. at 476; *cf. J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 878 (2011) (finding no personal jurisdiction under a stream-of-commerce theory where the defendant never shipped its product into or marketed its goods in the forum state). LG Chem shipped 18650 batteries into Michigan under

one agreement and entered into another "contract made and to be performed in the State of Michigan' and has a Michigan forum-selection clause." *Sullivan*, 585 F. Supp. 3d at 1003 (quoting R. 24-7 (Ex. 6, Automaker-product Manufacturer Contract at 20) (Page ID #945)). Entering into contracts in the forum state subject to the forum-state's laws that create an ongoing relationship, alongside placing one's products directly into the forum state, can satisfy purposeful availment. *See CompuServe*, 89 F.3d at 1265. LG Chem's contacts, as the district court found, demonstrate deliberateness; it made deliberate contact with Michigan. *See Sullivan*, 585 F. Supp. 3d at 1003–04. Thus, LG Chem could "reasonably have anticipated being haled into a[]" Michigan court. *See CompuServe*, 89 F.3d at 1264. Accordingly, LG Chem purposefully availed itself "of the privilege of conducting business" in Michigan and having its "activities . . . shielded by 'the benefits and protections' of [Michigan]'s laws." *Burger King*, 471 U.S. at 476.

The Due Process Clause next requires that the plaintiff's claim "'arise out of or relate to the defendant's contacts' with the forum" state. *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers*, 137 S. Ct. at 1780). The Constitution requires "an affiliation between the forum and the underlying controversy." *Id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1780); *see also MAG IAS*, 854 F.3d at 903 ("This requires that [defendant]'s contacts be 'related to the operative facts of the controversy.'" (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002))). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). "[T]his is a 'lenient standard,' requiring only that the cause of action have a 'substantial connection' to the defendant's activity in the state." *MAG IAS*, 854 F.3d at 903 (quoting *Bird*, 289 F.3d at 875). The Sixth Circuit, even before *Ford*, "explained that the cause of action need not 'formally' arise from defendant's contacts." *Air Prod.*, 503 F.3d at 553 (quoting *Bird*, 289 F.3d at 875).

The Supreme Court recently rejected a "causation-only approach" when interpreting the "requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Ford*, 141 S. Ct. at 1026 ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do."). Rather, the standard—"that the suit 'arise out of *or relate to* the defendant's contacts with the forum"—contains two parts

separated by a disjunctive conjunction. *Id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1780); *see also id.* at 1034 (Gorsuch, J., concurring). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 1026 (majority opinion). The Court stated that "[i]n the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Id.* But it does not require "proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Id.* The Due Process Clause does not limit specific jurisdiction over a defendant to the states only where a product "was designed, manufactured, or first sold." *Id.* at 1028.

LG Chem argues that because "none of [its] contacts [with Michigan] involved serving a consumer market for standalone 18650 batteries," its contacts cannot relate to Plaintiff's claims. Appellee Br. at 32. Specifically, it contends that "[n]one of [its] limited contacts with Michigan had anything to do with Plaintiff's claims for personal injury from use of an 18650 lithium-ion battery cell as a standalone battery for his vaping device." *Id.* at 33. Thus, according to LG Chem, "[a]ny connections that exist between Michigan and this lawsuit were formed entirely by Plaintiff, Montrose Smokers Palace, and other third parties; none by LG Chem." *Id.* at 31. This is too narrow a framing, and one disguising the rejected causation analysis. LG Chem, in essence, asks us to hold that the only way a court could have personal jurisdiction over LG Chem when a *consumer* plaintiff suffers an injury from one of LG Chem's 18650 batteries is if LG Chem served *the consumer market* for 18650 batteries in the forum state, even if it distributes that same injuring product within the forum state for a different market. It offers no authority in support of that bold assertion. And none exists. To reach this holding, we would need to require "proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford*, 141 S. Ct. at 1026. That we cannot do.[8]

LG Chem suggests that *Ford* does not apply here because, unlike LG Chem, Ford marketed the exact same vehicles that injured the plaintiffs to consumers in the forum states even though it had not shipped those specific injuring vehicles into the forum states. Appellee Br. at

---

[8]Whether LG Chem sold its batteries for limited types of commercial use as opposed to individual use may be relevant to liability, but LG Chem cites no authorities suggesting that this factor would implicate jurisdiction.

30–31. This argument is misplaced and confuses the standard. The caselaw requires deliberate acts by the defendant to establish the minimum contacts required to demonstrate purposeful availment. *See Ford*, 141 S. Ct. at 1027. But, when next looking for the requisite connection between the claims and the defendant's contacts under the second prong, our caselaw does not require that courts examine *why* that connection exists, so long as it sufficiently exists. *Cf. Bristol-Myers*, 137 S. Ct. at 1781 (finding the court lacked personal jurisdiction where nonresidents had not been injured by a defendant's product in the forum state and explaining that "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction" (alterations in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014))). It is true that Bristol-Myers had extensive contacts with California, including selling the drug in California, yet the nonresident plaintiffs "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* Here, however, Plaintiff is a Michigan resident who was injured by Defendant's product in Michigan—the same type of product that LG Chem shipped into Michigan around this time period.

Because due process requires that Plaintiff's claims "arise out of *or relate to* the defendant's contacts with the forum," *Ford*, 141 S. Ct. at 1026 (quoting *Bristol-Myers*, 137 S. Ct. at 1780), we look under this prong at a defendant's specific contacts with the state and consider their connection to a plaintiff's claim. LG Chem conducted business with Michigan companies regarding its 18650 batteries and shipped its 18650 batteries into Michigan, and Sullivan suffered injury from LG Chem's 18650 battery in Michigan. *See Tieszen*, 2021 WL 4134352, at *1, *5–6 (finding that a plaintiff's claim stemming from his injury allegedly caused by LG Chem's 18650 batteries sufficiently related to LG Chem's contacts with South Dakota because LG Chem sells its 18650 batteries to commercial customers in South Dakota, the plaintiff is a South Dakota resident, the plaintiff purchased the injuring batteries in South Dakota, and the batteries exploded in the plaintiff's pocket in South Dakota); *cf. McLaughlin*, 599 S.W.3d at 903–04 ("[Plaintiff] alleged only that LG Chem's model 18650 batteries made their way into Missouri by way of an independent, third-party distributor that sold the batteries into Missouri. While [Plaintiff] alleged LG Chem designed, manufactured, and sold the subject battery, [Plaintiff] did not allege LG Chem sold its batteries directly into Missouri."). Either Plaintiff ultimately purchased an

18650 battery that LG Chem directly shipped into Michigan, or the battery came from another state at the same time that LG Chem was contracting for and and shipping that same type of battery in Michigan. Either way, LG Chem had fair notice that it could be sued in Michigan for the Michigan consequences of defects relating to its 18650 battery, and even agreed with one company to be governed by Michigan law regarding the 18650 batteries. *See, e.g.*, *Tieszen*, 2021 WL 4134352, at *6 (considering *Ford* and finding relatedness and explaining that the plaintiff "alleges that: (1) LG Chem sells and distributes 18650 lithium-ion cell batteries in South Dakota, (2) [plaintiff] purchased such a battery online while in South Dakota, and (3) [plaintiff] was injured by an 18650 lithium-ion cell battery in South Dakota. Thus, [plaintiff]'s claim and LG Chem's contact with South Dakota both revolve around the 18650 lithium-ion battery."). Because due process does not require a causal showing, *Ford*, 141 S. Ct. at 1026, the district court correctly determined that Plaintiff's claims related to LG Chem's contacts with Michigan.

"Lastly, we consider whether exercising personal jurisdiction over [LG Chem] would be reasonable, i.e., whether it would 'comport with 'traditional notions of fair play and substantial justice.'" *CompuServe*, 89 F.3d at 1267–68 (quoting *Reynolds*, 23 F.3d at 1117). When a defendant "avail[s] himself of the privilege of conducting business" in the forum state and "his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. Put another way, when we find purposeful availment and relatedness, "an inference arises that this third factor is also present." *CompuServe*, 89 F.3d at 1268. We "must consider several factors in this context, including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *Id.* (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir. 1988)).

The district court correctly determined that the exercise of personal jurisdiction would be reasonable and would not offend the "traditional notions of fair play and substantial justice." *CompuServe*, 89 F.3d at 1267–68 (quoting *Reynolds*, 23 F.3d at 1117); *see also Sullivan*, 585 F. Supp. 3d at 1006–07. LG Chem has already contracted in Michigan; has agreed to litigate in its courts; and has litigated other lawsuits in Michigan, suggesting that doing so again is not too

burdensome. *See Sullivan*, 585 F. Supp. 3d at 1007. Michigan—whose laws govern a LG Chem contract for 18650 batteries and who received shipments of 18650 batteries—has a strong interest in providing a forum for lawsuits relating to their residents' injuries allegedly caused by these products. Plaintiff suffered severe injuries and has a strong interest in adjudicating LG Chem's liability. Ultimately, the district court properly determined that the Constitution permits a court sitting in Michigan to exercise personal jurisdiction over LG Chem. The district court did not err in reaching this constitutional determination.

## IV. CONCLUSION

Michigan law requires that courts separately analyze whether a court sitting in Michigan can properly exercise personal jurisdiction over a defendant under the state's long-arm statute and under the Due Process Clause. Though the two questions may *often* rise and fall together because of Michigan's broad interpretation of its long-arm statutes, parties should not presume that the two inquiries are always coextensive and should independently address each. Because of LG Chem's contacts with Michigan, we hold that the district court sitting in Michigan has personal jurisdiction over LG Chem under Michigan's long-arm statute and that the exercise of jurisdiction comports with the Due Process Clause. Accordingly, we **REVERSE** the district court's judgment and **REMAND** for further proceedings.