*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0195**

Shawn Peters,
Respondent,

vs.

Samsung SDI Co., Ltd., a Korean Corporation,
Appellant,

Samsung SDI America, Inc., a Michigan Corporation,
Defendant,

Infinite Vapors, a Minnesota Business Entity, et al.,
Defendants,

and

DOES 1-100 inclusive,
Defendants.

**Filed October 13, 2025**
**Affirmed**
**Bratvold, Judge**

Hennepin County District Court
File No. 27-CV-23-4077

David Coyle, Pritzker Hageman, P.A., Minneapolis, Minnesota; and

Matthew W. Clark (pro hac vice), Bentley & More LLP, Newport Beach, California (for respondent)

Michael R. Carey, Lyndsey D. Jackson, Dykema Gossett PLLC, Minneapolis, Minnesota; and

Christopher B. Emch (pro hac vice), Herbert Smith Freehills Kramer New York LLP, New York, New York (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Bratvold, Judge; and Slieter, Judge.

## NONPRECEDENTIAL OPINION

**BRATVOLD**, Judge

Appellant Samsung SDI Co. Ltd. (SDI) manufactured an 18650 lithium-ion battery cell that exploded in respondent Shawn Peters's pocket and caused injury. Peters bought the battery cell from a vape store in Minnesota to use in his e-cigarette device.[1] After his injury, Peters sued SDI, a South Korean company, seeking damages. SDI moved to dismiss the amended complaint for lack of personal jurisdiction. SDI now challenges the district court's denial of its motion to dismiss.

SDI argues that it is not subject to personal jurisdiction in Minnesota courts under the Due Process Clause because SDI never sold or shipped its 18650 batteries "for standalone use by consumers" in Minnesota. Based on the record before us, we conclude that Minnesota courts have personal jurisdiction over SDI because SDI has sufficient minimum contacts with the forum state. Thus, we affirm.

## FACTS

The following summarizes the allegations in Peters's amended complaint and the evidence submitted by both parties in support of their positions on SDI's motion to dismiss.

---

[1] "Vape" is a synonym for e-cigarette. *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 553 (2025). Thus, a "vape store" sells e-cigarettes and related accessories.

Our recitation of the facts is limited given the confidential status of some documents filed in the district court.[2]

SDI is incorporated and maintains its headquarters and principal place of business in South Korea. It "designs and manufactures numerous sizes and models of battery cells, including 18650 lithium-ion battery cells."

---

[2] To be clear, we have reviewed the entire record relevant to the issues on appeal. Our discussion of the record in this opinion is limited to information disclosed in publicly filed documents, including the district court's order denying SDI's motion to dismiss. The district court issued a protective order that states, "The parties possess certain non-public information and documents that contain confidential, proprietary, or trade secret information that may be subject to discovery in this action, but that should not be made publicly available." This included "information contained in or derived from documents, deposition testimony, deposition exhibits, trial testimony, computer memory or archives, other written, recorded or graphic matter, and all copies, excerpts, or summaries thereof." Much of the evidence submitted on the jurisdictional issue is designated as confidential.

The general rule is that court records "are presumed to be open to any member of the public" unless there is an exception in the access rules. Minn. R. Pub. Access to Recs. of Jud. Branch 2; *see also* Minn. R. Pub. Access to Recs. of Jud. Branch 4, subd. 1 (identifying certain records not available to the public). But materials filed as confidential in the district court remain confidential on appeal. Minn. R. Civ. App. P. 112.02, subd. 1. On the other hand, "[i]nformation contained in non-public materials that has been disclosed in publicly accessible documents in the trial court record must be treated as public on appeal, unless a specific statute, court rule, or court order directs otherwise." Minn. R. Civ. App. P. 112.03. Similarly, we presume that information contained in publicly filed appellate briefs is public. *See* Minn. R. Civ. App. P. 112.01, subd. 1 ("Appellate case records are presumptively public, unless a specific statute, court rule, or court order directs otherwise.").

In light of these rules, "[e]very party to an appeal must take reasonable steps to prevent the public disclosure of non-public materials and information in appellate case records." *Id.*, subd. 2; *see also Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 655 n.1 (Minn. App. 2011) (discussing the filing requirements to make an appellate brief confidential), *rev. denied* (Minn. Apr. 19, 2011). Both Peters and SDI appear to discuss confidential information in their publicly accessible briefs filed with this court.

In March 2023, Peters sued SDI, Infinite Vapors, Uptown Vapors LLC, and others,[3] asserting strict- and negligent-products-liability claims. Later that month, the case was removed to federal court. In July 2023, the case was remanded to state court. In August 2023, Peters filed an amended complaint.

The amended complaint alleged that Peters—a Minnesota resident—purchased an e-cigarette device along with a Samsung 18650 lithium-ion battery cell from defendants Infinite Vapors and Uptown Vapors—two Minnesota vape stores—in late 2019. On or around January 7, 2020, Peters "was arriving at work" in Minnesota "when suddenly and without warning, the Samsung batteries in his left front pocket exploded" and caused severe burns. Peters was transported by ambulance to a Minneapolis hospital for medical treatment. The amended complaint alleged that SDI "manufactures e-cigarette products, including the battery purchased by [Peters] that is the subject of this lawsuit," and that SDI "has extensive, ongoing, and specific contacts with Minnesota."

Along with other defendants,[4] SDI moved to dismiss, arguing that it was not subject to personal jurisdiction in Minnesota and submitting evidence in support of its motion. In

---

[3] Peters also sued Samsung SDI America Inc.—SDI's American entity—and Does 1-100 inclusive. The parties later stipulated to the dismissal with prejudice of all claims against Samsung SDI America.

[4] Infinite Vapors and Uptown Vapors moved to dismiss under Minn. Stat. § 544.41, subds. 1-2 (2024), which requires dismissal of a strict-products-liability complaint against a nonmanufacturer defendant who certifies the correct identity of the manufacturer by affidavit. The district court denied the motion because Peters "sufficiently alleged" that Infinite Vapors and Uptown Vapors "had actual knowledge of defects in the lithium-ion batteries they sold." *See* Minn. Stat. § 544.41, subd. 3(2) (2024) (prohibiting dismissal if a plaintiff can show "that the defendant had actual knowledge of the defect in the product

part, SDI relied on an affidavit by its principal engineer, who averred that "SDI's contacts with Minnesota are limited to the sale of fully assembled, sealed battery packs to three national manufacturers based in Minnesota that manufacture products such as garden tools, industrial floor cleaners, and golf carts." SDI's engineer also attested that SDI "has never recommended or authorized the use of its lithium-ion battery cells in e cigarettes" nor "promoted the sale of its products, including the 18650 lithium-ion battery cells, to consumers or otherwise targeted consumers in Minnesota."

Following discovery on the personal-jurisdiction issue, Peters opposed SDI's motion and submitted additional evidence that is relevant as discussed below.

After a hearing, the district court entered a written order denying SDI's motion. The district court weighed five factors to determine whether it could exercise specific personal jurisdiction over SDI. The district court determined that four factors supported a finding of personal jurisdiction and one factor was neutral. The district court found that SDI "sold nearly three million of its 18650 batteries directly to Minnesota manufacturers" during the relevant time period. The district court also found that, "[r]egardless of the intended use of the batteries and whether the batteries were sold in sealed packs to sophisticated companies, the battery was allegedly sold by a Minnesota retailer to Peters, a Minnesota resident, where he was allegedly injured by it." Based on this record, the district court concluded that SDI had "purposefully availed itself of the benefits and responsibilities of

---

which caused the injury"). The district court's denial of this motion to dismiss is not before us in this appeal.

5

doing business in Minnesota" and thus that Minnesota courts have personal jurisdiction over SDI.

SDI appeals.

## DECISION

Personal jurisdiction refers to "the court's power to exercise control over the parties." *Swanson v. Wolf*, 986 N.W.2d 217, 220 (Minn. App. 2023) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)). Appellate courts review questions of personal jurisdiction de novo. *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321, 326 (Minn. 2016). To overcome a motion to dismiss for lack of personal jurisdiction, the plaintiff must make "a prima facie showing of personal jurisdiction." *Id.*

"The allegations of the complaint, together with any supporting evidence, must be viewed as true for purposes of determining whether plaintiff has made a prima facie showing of personal jurisdiction." *V.H. v. Est. of Birnbaum*, 543 N.W.2d 649, 653 (Minn. 1996). But if the defendant's motion to dismiss is supported by affidavits that deny the facts alleged in the complaint, the plaintiff "cannot rely on general statements for a prima facie showing of personal jurisdiction—rather, specific evidence must be alleged." *Rilley*, 884 N.W.2d at 334-35. If the plaintiff supports their allegations with affidavits or other evidence, that evidence is taken as true. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004) ("At the pretrial stage, . . . the plaintiff's allegations and supporting evidence are to be taken as true."). And when it is a close call, appellate courts "resolve any doubt in favor of retaining jurisdiction." *Bandemer v. Ford Motor Co.*,

931 N.W.2d 744, 749 (Minn. 2019), *aff'd*, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021).

Minnesota's long-arm statute governs its exercise of personal jurisdiction over a nonresident defendant. Minn. Stat. § 543.19, subd. 1 (2024). The long-arm statute extends as far as the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution allows. *Rilley*, 884 N.W.2d at 327. Under the Due Process Clause, a state court cannot exercise personal jurisdiction over a nonresident defendant "unless that defendant has minimum contacts with the state and maintaining the lawsuit does not offend traditional notions of fair play and substantial justice." *Id.* (quotations omitted).

Minnesota courts may exercise specific personal jurisdiction over a nonresident defendant "if the defendant purposefully avails itself of the privileges, benefits, and protections of the forum state, such that the defendant should reasonably anticipate being haled into court there." *Bandemer*, 931 N.W.2d at 749-50. "Specific jurisdiction exists when the defendant's contacts with the forum state are limited, yet connected with the plaintiff's claim such that the claim arises out of or relates to the defendant's contacts with the forum." *Juelich*, 682 N.W.2d at 570 n.3.[5]

---

[5] A district court may exercise general personal jurisdiction over a nonresident defendant when the "defendant's contacts with the forum state are so substantial and are of such a nature (continuous and systematic) that the state may assert jurisdiction over the defendant even for causes of action unrelated to the defendant's contacts with the forum state." *Id.* The district court determined that it did not have general personal jurisdiction over SDI. On appeal, Peters does not argue that the district court had general personal jurisdiction over SDI.

On appeal, SDI concedes that it "purposefully availed itself of the privilege of doing business in Minnesota by shipping sealed battery packs" to three Minnesota manufacturers. But SDI nevertheless contends that it lacks sufficient minimum contacts to support a Minnesota court's exercise of specific personal jurisdiction over it.

Minnesota courts use five factors to assess whether exercising personal jurisdiction is consistent with due process: "(1) the quantity of contacts with the forum state; (2) the nature and quality of those contacts; (3) the connection of the cause of action with these contacts; (4) the interest of the state providing a forum; and (5) the convenience of the parties." *Rilley*, 884 N.W.2d at 328. The first three factors "determine whether minimum contacts are present," *Bandemer*, 931 N.W.2d at 749-50, while the last two factors are concerned with "whether jurisdiction is reasonable according to traditional notions of fair play and substantial justice," *Rilley*, 884 N.W.2d at 328. "Although the key inquiry is whether minimum contacts have been established, a strong showing on the reasonableness factors may serve to fortify a borderline showing of minimum-contacts factors." *Id.* (quotations omitted).

We consider each of the five factors in turn.

## 1.      Quantity of SDI's Contacts with Minnesota

To sustain a Minnesota court's exercise of personal jurisdiction, the quantity of a nonresident defendant's contacts with Minnesota must have been "numerous and fairly frequent or regular in occurrence." *Hardrives, Inc. v. City of Lacrosse*, 240 N.W.2d 814, 817 (Minn. 1976). Minnesota courts apply the "stream-of-commerce theory" to manufacturers and primary distributors when analyzing quantity of contacts. *Rostad v.*

8

*On-Deck, Inc.*, 372 N.W.2d 717, 720 (Minn. 1985).[6] The United States Supreme Court explained:

> [I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). Here, the district court determined that the first factor favored exercising personal jurisdiction over SDI because SDI sold and shipped "approximately 2.9 million Samsung 18650 batteries" to Minnesota manufacturers between 2017 and 2022. The district court also found that SDI "has known since 2016 that the 18650 batteries were being used by e-cigarette users."

On appeal, SDI argues that "there is no record evidence that any of the 18650 cells in the sealed battery packs that SDI shipped" to Minnesota manufacturers "were ever placed into the Minnesota stream of commerce." SDI contends that it "never shipped 18650 cells into the United States (or anywhere else) for purposes of individual sale" and that it did not sell the 18650 battery cells "for use in e-cigarettes." Peters counters that the

_____

[6] In *Rilley*, the supreme court declined to follow *Rostad* in part. *See Rilley*, 884 N.W.2d at 333-34 & n.14 (rejecting *Rostad*'s reasoning that nationwide marketing can establish minimum contacts with a forum state in support of personal jurisdiction). Because the record evidence does not include that SDI used nationwide marketing of 18650 battery cells to Minnesota consumers, the portion of *Rostad* that is later criticized in *Rilley* is not relevant to our analysis.

record shows SDI's contacts with Minnesota "are extensive, wide-ranging, and long running."[7]

Peters offered specific evidence of SDI's contacts with Minnesota, which we must accept as true for this appeal. *See Juelich*, 682 N.W.2d at 570. Between 2017 and 2022, SDI entered into supplier contracts with three Minnesota manufacturers to sell sealed 18650 battery packs for use in consumer products.[8] Sealed battery packs consist of individual battery cells; the 18650 battery cells in the sealed packs were the same as the 18650 battery cell that Peters bought for his e-cigarette device.[9] Under its supplier contracts, SDI shipped about 2.9 million individual 18650 battery cells to Minnesota inside sealed battery packs.

---

[7] Peters maintains that the "stream of commerce—both targeted directly by [SDI] and indirectly by pumping hundreds of millions of batteries into worldwide markets—led to the certainty that Samsung 18650 batteries were being purchased and used in Minnesota." Because our analysis of SDI's direct contacts with Minnesota are dispositive, we need not address Peters's argument that SDI "indirectly targeted" Minnesota through the global stream of commerce.

[8] SDI's engineer averred that SDI sold fully assembled, sealed battery packs to the Minnesota manufacturers. Other record evidence is confidential and less clear about whether these were individual battery cells or sealed packs.

[9] In its brief, SDI states that the 18650 batteries inside the sealed battery packs were "inaccessible to anyone who handled the packs." SDI does not cite any record evidence to support this claim, so we do not consider its bare assertion. *See* Minn. R. Civ. App. P. 128.02, subd. 1(c) ("Each statement of a material fact shall be accompanied by a reference to the record, as provided in Rule 128.03."); *Cole v. Star Trib.*, 581 N.W.2d 364, 371 (Minn. App. 1998) (stating that a party's failure "to provide citations to the record" is "a flagrant violation" of rule 128.02, subdivision 1(c), and can "lead to non-consideration of an issue").

10

Peters also submitted evidence that SDI knew since at least 2016 that its 18650 batteries were being resold for use in e-cigarette devices. This evidence, which must be accepted as true at this stage of the proceedings, showed that, before Peters was injured, SDI conducted internal investigations that confirmed its 18650 battery cells were being sold at vape stores in the United States and through an online retailer. Other record evidence on this point is confidential. Viewing this evidence as true, it is fair to conclude that SDI anticipated that its 18650 battery cells would be used by consumers in e-cigarette devices.

We therefore reject SDI's argument that it did not place its 18650 battery cells into the Minnesota stream of commerce and that it could not reasonably expect that its battery cells would be used by consumers, including e-cigarette users. "A manufacturer who places its product in the stream of commerce in an effort to serve, *directly or indirectly*, markets in a jurisdiction is subject to suit in that jurisdiction . . . ." *Rostad*, 372 N.W.2d at 721 (emphasis added). Because Peters submitted evidence that (1) SDI sold millions of 18650 battery cells—the same type of battery cell that exploded in Peters's pocket—directly to Minnesota manufacturers and (2) SDI knew that its 18650 battery cells were being sold to Minnesota consumers for use in e-cigarettes, we conclude that the quantity of SDI's contacts with the forum state favors the court's exercise of personal jurisdiction.

2. **Nature and Quality of SDI's Contacts with Minnesota**

When assessing factor two, courts must consider whether the defendant "purposefully availed itself of the benefits and protections of Minnesota." *Juelich*, 682 N.W.2d at 574. A defendant must have "deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual

11

relationship centered there." *Ford Motor Co.*, 592 U.S. at 359 (quotations omitted). Purposeful availment cannot be "a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted). But the fact that a defendant's defective goods came to Minnesota "by an unknown and thereby a possibly circuitous route" does not mean they prevail on factor two if the defendant "can expect to be sued" in Minnesota. *Rostad*, 372 N.W.2d at 721-22. This court has determined that "a regular course of voluminous sales" qualifies as purposeful availment. *Butler v. JLA Indus. Equip., Inc.*, 845 N.W.2d 834, 847 (Minn. App. 2014), *rev. denied* (Minn. July 15, 2014).

The district court determined that factor two favors personal jurisdiction because SDI (1) shipped "nearly three million 18650 batteries to Minnesota"; (2) "enumerated Minnesota as the appropriate venue in its supplier contracts with at least one of the manufacturers located in Minnesota"; (3) included Minnesota choice-of-law clauses in its supplier contracts for 18650 batteries; and (4) "specifically acknowledged in at least one contract that its batteries may be resold or used differently."

On appeal, SDI first argues that its supplier contracts with Minnesota manufacturers "do not establish specific personal jurisdiction" because Peters's products-liability claims do not involve a dispute over those contracts. Second, SDI points out that it "has no contractual relationship with [Peters], or either of the vape-shop co-defendants." Third, SDI contends that the "boilerplate" resale provision in its contract with one Minnesota manufacturer does not establish jurisdiction, apparently because it is unreasonable to expect that a manufacturer of "garden tools and industrial farm equipment" would resell

12

18650 battery cells for e-cigarette use.[10] Peters counters that SDI's supplier contracts with Minnesota manufacturers demonstrate the "high quality" of its contacts with Minnesota.

First, we consider the connection between Peters's claims and SDI's contacts with Minnesota in factor three, not factor two. *See Rilley*, 884 N.W.2d at 328 (analyzing "the connection of the cause of action with [the forum] contacts" under factor three). Second, SDI is correct that Minnesota has personal jurisdiction over a nonresident defendant who forms a contract with a Minnesota entity but "only where the dispute involves the contract." *Marshall v. Inn on Madeline Island*, 610 N.W.2d 670, 676 (Minn App. 2000). Third, the second factor focuses on whether a nonresident defendant's contacts with the forum state show purposeful availment. *Juelich*, 682 N.W.2d at 574. And caselaw has recognized that "a regular course of voluminous sales" qualifies as purposeful availment. *Butler*, 845 N.W.2d at 847. Thus, SDI's supplier contracts with Minnesota businesses are evidence of the quality of its contacts with the state because those agreements relate to its role as a manufacturer, seller, and distributor of 18650 battery cells.

Peters submitted evidence that SDI manufactured, sold, and shipped almost three million 18650 battery cells in sealed battery packs to three Minnesota manufacturers between 2017 and 2022. SDI entered into supplier contracts with these Minnesota manufacturers, and these contracts included Minnesota choice-of-law and forum-selection

---

[10] SDI also argues that the district court "improperly credited unsupported allegations" in the amended complaint—specifically, allegations that SDI "shipped individual 18650 cells into Minnesota either directly or indirectly through distributors." This argument misstates the district court's analysis; the district court expressly recognized that SDI shipped *sealed* 18650 battery packs into Minnesota.

clauses. This evidence shows that SDI agreed to be governed by Minnesota law on the sale of its sealed battery packs, including the 18650 battery cells within the packs. Other courts have reached the same conclusion on similar facts. *See Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 671 (6th Cir. 2023) (concluding that a nonresident battery manufacturer "purposefully availed itself of the benefits of doing business in Michigan and the protections of Michigan law" based on its "direct shipments" of 18650 batteries into Michigan and its supplier contracts containing forum-selection clauses).

In one supplier contract, SDI acknowledged and agreed "that goods and materials furnished to Buyer hereunder, *may be resold, either directly or indirectly, for personal, family, or household use.*" (Emphasis added.) SDI insists that this resale provision is a "boilerplate" term. Even so, the resale provision shows that SDI anticipated that its 18650 battery cells could be resold "directly or indirectly" to consumers as a result of SDI's sales to Minnesota manufacturers.

Because SDI deliberately entered the Minnesota market to sell 18650 battery packs, SDI anticipated direct and indirect resale, and SDI's supplier contracts for the battery-pack sales included venue- and forum-selection clauses that showed SDI purposefully availed itself of Minnesota's "benefits and protections," *Juelich*, 682 N.W.2d at 574, we conclude that the quality of SDI's contacts with Minnesota favors the forum court's exercise of personal jurisdiction.

3.      **Connection Between the Causes of Action and SDI's Contacts with Minnesota**

A plaintiff's claims "must arise out of or relate to the defendant's contacts" with Minnesota. *Ford Motor Co.*, 592 U.S. at 359 (quotation omitted). In other words, "there

14

must be an affiliation between [Minnesota] and the underlying controversy, principally, an activity or an occurrence that takes place in [Minnesota] and is therefore subject to the State's regulation." *Id.* (quotations omitted). If a nonresident defendant's "contacts subject it to fair warning that it could be haled into court in Minnesota, there is a sufficient nexus between the contacts and the causes of action." *State by Ellison v. HavenBrook Homes, LLC*, 996 N.W.2d 12, 27 (Minn. App. 2023) (quotation omitted), *rev. denied* (Minn. Jan. 16, 2024).

The district court determined that factor three favors finding personal jurisdiction over SDI because SDI "sold close to three million 18650 batteries in Minnesota, and most were sold after [SDI] allegedly had notice that the batteries were being used in e-cigarettes."

On appeal, SDI urges that Peters's injuries do not relate to its Minnesota contacts because "SDI's shipments of sealed battery packs to [Minnesota manufacturers] did not create any reasonable expectation that SDI would have to defend in Minnesota a personal injury claim involving use of one of its 18650 cells." SDI emphasizes that it does not sell or advertise its 18650 battery cells to consumers. SDI maintains that there is no record evidence that

> *anyone* in Minnesota . . . has ever purchased, used, or become injured by an 18650 cell that entered the forum as a result of *SDI's* contacts with Minnesota, as opposed to the unilateral activities of unaffiliated third parties, namely Minnesota vape shops who sold SDI's 18650 cells to consumers without SDI's prior knowledge or authorization.

15

Peters responds that his personal-injury suit is sufficiently connected to SDI's contacts with Minnesota because SDI "intentionally and knowingly target[ed] 18650 batteries to Minnesota, making venue, choice of law, and other agreements regarding 18650 batteries," and Peters was "injured by an 18650 Samsung battery in Minnesota."

Specific personal jurisdiction does not require "proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 592 U.S. at 362. In *Ford Motor Co.*, the United States Supreme Court considered whether two state courts had personal jurisdiction over Ford Motor Company in products-liability suits stemming from accidents involving Ford cars. *Id.* at 354. Ford argued that the forum states lacked personal jurisdiction "because the particular car involved in the crash was not first sold in the forum State, nor was it designed or manufactured there." *Id.* Ford maintained that its contacts with the forum states must have caused the plaintiffs' injuries to establish the forum's personal jurisdiction over Ford. *Id.* at 352. The Supreme Court disagreed and determined that evidence of Ford's substantial presence in the forum states—its advertising, selling, and servicing of the defective car models involved in the accidents—established minimum contacts and favored personal jurisdiction. *Id.* at 364-68. The Supreme Court concluded that Ford's contacts with the forum states did not need to cause the plaintiffs' injuries to establish minimum contacts. *Id.* at 361-68.

The record evidence about SDI shows that, unlike Ford, SDI did not advertise or sell its allegedly defective product to Minnesota consumers. Despite this distinction, SDI

had a substantial presence in Minnesota; it sold and shipped millions of Samsung 18650 battery packs *directly* to Minnesota manufacturers. Peters bought a Samsung 18650 battery cell in Minnesota and was injured in Minnesota when that battery cell exploded. While SDI shipped its 18650 battery cells in sealed battery packs and no evidence shows Peters's claim "came about" because of SDI's Minnesota activities, this is exactly the argument rejected in *Ford Motor Co. Id.*

Taking Peters's evidence as true, as we must in this procedural posture, SDI acknowledged in at least one supplier contract that its "goods and materials" shipped into Minnesota "may be resold, either directly or indirectly, for personal, family, or household use." From this, Peters fairly infers that SDI anticipated the resale of its 18650 battery cells for consumer use in Minnesota. And as already discussed, Peters submitted evidence that, since 2016, SDI knew that its 18650 battery cells were being sold online and at vape stores in the United States for use in e-cigarettes. Other relevant record evidence is confidential. The record evidence sufficiently connects SDI's business dealings in Minnesota to Peters's injury from the resale of an 18650 battery at a vape store.

Our conclusion aligns with persuasive decisions from the Fifth and Sixth Circuits. *See Ethridge v. Samsung SDI Co.*, 137 F.4th 309 (5th Cir. 2025); *Sullivan*, 79 F.4th 651. In both *Ethridge* and *Sullivan*, a consumer was injured after an 18650 battery used in their e-cigarette exploded in their pocket. *Ethridge*, 137 F.4th at 313; *Sullivan*, 79 F.4th at 657. Like SDI does here, the nonresident manufacturer of the 18650 battery in those cases argued that the district court lacked personal jurisdiction over the manufacturer in the resulting personal-injury suit, in part because the manufacturer's contacts with the forum

state involved sales to sophisticated companies—not consumer markets. *Ethridge*, 137 F.4th at 318 & n.6; *Sullivan*, 79 F.4th at 672 & n.8.[11]

Both circuits rejected this "different market" argument as inconsistent with United States Supreme Court precedent. *Ethridge*, 137 F.4th at 318-19; *Sullivan*, 79 F.4th at 672. The Sixth Circuit explained that this argument "is too narrow a framing, and one disguising the rejected causation analysis" from *Ford Motor Co*. *Sullivan*, 79 F.4th at 672. It would require a showing that a nonresident defendant's contacts with the forum state caused the plaintiff's injuries—that a manufacturer sold its defective 18650 batteries to in-state consumers, thereby injuring a consumer. *Id.* The Fifth Circuit separately reasoned that a "different market" approach is "inconsistent with the Supreme Court's whole-forum focus" regarding personal jurisdiction. *Ethridge*, 137 F.4th at 319; *see also Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (stating that "there must be an affiliation between *the forum* and the underlying controversy" (emphasis added) (quotation omitted)); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality opinion) ("[P]ersonal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis. The question is whether a defendant has followed a course of conduct directed at *the society or economy* existing within the jurisdiction of a given sovereign." (emphasis added)). And the "different market" dichotomy would require courts "to re-slice the forum sales along a

---

[11] We reject the contrary analysis in other federal courts as unpersuasive and inconsistent with *Ford Motor Co. B.D. by Myers v. Samsung SDI Co.*, 143 F.4th 757 (7th Cir. 2025); *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023).

18

potentially infinite number of different markets," which would render a jurisdictional inquiry unworkable. *Ethridge*, 137 F.4th at 319-20.

We agree with the Fifth and Sixth Circuits that a plaintiff need not show that a nonresident manufacturer sold its allegedly defective product to consumers in the forum state. Instead, the plaintiff must show that the manufacturer's contacts—with sophisticated companies or otherwise—"subject it to fair warning that it could be haled into court in Minnesota." *HavenBrook Homes*, 996 N.W.2d at 27 (quotation omitted). That is the evidence submitted by Peters. Because the claims in the amended complaint relate to SDI's contacts with Minnesota and are supported by record evidence, we conclude that factors one through three favor a Minnesota court's exercise of personal jurisdiction over SDI because SDI had sufficient minimum contacts with Minnesota.

### 4. Minnesota's Interest in Providing a Forum

We next consider Minnesota's interest in providing a forum for relief. "Minnesota has an interest in the litigation if the case involves a resident who was severely injured and the accident took place in Minnesota." *Butler*, 845 N.W.2d at 848. The district court determined that factor four favors personal jurisdiction because Peters "purchased a Samsung 18650 battery from a Minnesota retailer, used the product in Minnesota, and his injury occurred in Minnesota."

On appeal, SDI does not address factor four. Peters argues that "Minnesota has a strong interest in providing a forum" because a Minnesota resident "purchased a product in Minnesota from a Minnesota retailer, had that product explode in Minnesota, causing injury [in Minnesota] and requiring him to seek extensive medical treatment" in Minnesota.

We agree with the district court that Minnesota has a strong interest in protecting its residents, like Peters, from defective products that enter the state and cause injury. *See id.* Thus, Minnesota's interest in providing a forum favors finding personal jurisdiction over SDI.

### 5.　　Convenience of the Parties

For the fifth factor, we consider the parties' convenience. When "some witnesses will be required to travel to a foreign country" for litigation, this factor is neutral. *Juelich*, 682 N.W.2d at 575-76. The district court found that factor five was neutral because, "[r]egardless of the forum that is ultimately selected, some evidence and witnesses are located in a foreign country."

On appeal, SDI does not address factor five. Peters argues that this factor "weighs slightly in favor of personal jurisdiction" because the "witnesses to the accident, [Peters], the medical professionals, and the retailer defendant[s] all reside in Minnesota." We agree with the district court. The record shows that Peters, Infinite Vapors, Uptown Vapors, and Peters's witnesses are in Minnesota. SDI, however, is a South Korean company, and its witnesses may need to travel abroad to defend this case. Thus, party convenience is neutral.

In sum, when we accept Peters's evidence of jurisdiction as true in accordance with precedent, Peters has established a prima facie case favoring a Minnesota court's exercise of personal jurisdiction over SDI. The evidence submitted shows that SDI's contacts with Minnesota include manufacturing, selling, and shipping millions of 18650 battery cells into Minnesota from 2017 to 2022. SDI has known since 2016 that Samsung 18650 battery cells were being resold for consumer use in e-cigarette devices. SDI's supplier contracts with

20

Minnesota manufacturers that bought the 18650 battery packs included venue- and forum-selection clauses that demonstrate SDI's purposeful availment of Minnesota as a forum. And at least one of these contracts shows that SDI anticipated its 18650 battery packs, including the individual 18650 battery cells, would be resold for consumer use.

We therefore conclude that a Minnesota court's exercise of personal jurisdiction over SDI comports with notions of fair play and substantial justice. Thus, the district court did not err by denying SDI's motion to dismiss. We express no opinion on the merits of Peters's products-liability claims in the underlying dispute.

**Affirmed.**